1842.

DAVIS
v.
PERRINE.

DAVIS and others *v.* PERRINE and others.

ARCHER and MARTLING *v.* PERRINE and SMITH.

UNDERHILL *v.* PERRINE, EVANS and SMITH.

Where separate suits are brought and separate judgments obtained against maker and endorser of a promissory note, and the endorser pays the amount, he is entitled to the note and all benefit of the judgment and execution as against the maker.

*Same principle* where drawer and endorser are jointly sued under the statute of 1832; and an endorser of a note having to pay (on a joint judgment obtained against him and the drawer) may take an assignment from the plaintiff in the action and use it as a subsisting judgment, for his indemnification, as against the drawer.

But, where there is a judgment on a bond against co-obligors, one of them being a surety, the bond merges in the judgment, and the surety can have no redress back against the principal obligor under such bond or on the judgment.

Although a deed or assignment is set aside by a decree obtained in a judgment creditor's suit, still it should be limited to the rights of such judgment creditor, and therefore, another judgment creditor does not, necessarily, get a benefit thereby.

*April 26,
1842.*

*Surety.
Principal
and Sure-
ty.
Promisso-
ry note.
Drawer
and En-
dorser.
Bond.
Judgment.
Fraud.
Debtor and
Creditor.
Judgment
Debtor.*

EXCEPTIONS to master's report; having relation to surplus money, being a balance on a sale in foreclosure against the defendant, Robert Perrine.

This defendant, Perrine, had, on the twenty-eighth day of December one thousand eight hundred and thirty-six, made an assignment to Alfred C. Smith; having on the fourteenth day of June preceding executed a mortgage in his favor. The complainants in the second suit, Daniel O. Archer and Stephen Martling had recovered judgments against Perrine; and, on the sixteenth day of October in the year one thousand eight hundred and thirty-seven, they filed a judgment-creditor's bill, with a view to get rid of the assignment and mortgage on the ground of fraud.

And the complainant in the third suit, Andrew Underhill, on the fourth day of November in the same year, filed a similar bill with the like object.

Smith Barker, Esquire, had been appointed receiver in

these suits ; and under respective decrees therein, obtained in the months of October and December one thousand eight hundred and forty, the said assignment and mortgage were declared fraudulent and void, and the said Perrine and Alfred C. Smith were directed to release and reassign to the receiver, Mr. Smith Barker, which was done.

Among other claimants of the surplus money arising on the before-mentioned foreclosure were George Rudd and Richard L. Rudd ; and, on a reference to master Ruggles to ascertain the amounts due to claimants and as to their priorities, Messrs. Rudd put in their demand, which arose under the following circumstances :  The president, directors and company of the Mechanics' and Traders' Bank, on the twenty-fourth day of November one thousand eight hundred and thirty-six, pursuant to the statute authorizing the joinder as defendants in the action of parties liable in various capacities on bills of exchange and promissory notes, commenced a suit in the superior court of the city and county of New York against the said Robert Perrine as maker and the said George Rudd and Richard L. Rudd as the endorser thereof and one William Tilden as another subsequent endorser, upon a promissory note bearing date August 3d, 1836, made by the defendant Robert Perrine in favor of the said George Rudd and Richard L. Rudd (under their style of G. & R. L. Rudd) for four hundred and fifty dollars ; and judgment was recovered and docketed on the seventeenth day of January 1837, as well against Perrine as against the Messrs. Rudd, who had received and passed away the note for value.   An execution had been taken out ; and as Perrine had covered his property by the before-mentioned assignment and mortgage, G. & R. L. Rudd had to pay the amount of the execution ; and after having done so, on the fifteenth day of July one thousand eight hundred and thirty-nine, they took an assignment of the judgment from the plaintiffs therein against the said Robert Perrine.

These parties, G. &. R. L. Rudd, claimed to be entitled to be paid the amount of principal and interest so paid by them on such judgment out of the surplus monies in preference to the judgment-demand of the complainants Archer and Martling, as also in preference to any rights of the re-

1842.

DAVIS
*v.*
PERRINE.

ceiver ; and as this priority was not sanctioned by the master, they took exceptions to his report in the premises.

Mr. *Charles O'Conor*, for George Rudd and Richard L. Rudd.

Mr. *Smith Barker*, receiver, in *pro. per.*

Mr. *W. Silliman*, for the complainant Underhill.

Mr. *W. M. Mitchell*, for the complainants Archer and Martling.

*Dec.* 27.    THE VICE-CHANCELLOR :—The first question is, whether the judgment, recovered by the bank against the maker and endorsers of the note and assigned to the endorsers after they had paid it on the execution, is a subsisting judgment against the maker, and can be regarded as of any force or validity in the hands of the endorser. If the holder of a note should sue the maker and endorser separately in distinct actions and go to judgment and execution against both, and the endorser should pay the whole debt on the execution against him, there could be no question but he would be entitled to the benefit and security of the judgment and execution against the maker : upon the principle that a surety paying the debt is to be placed in the shoes of the creditor, and is entitled to the benefit of all other securities and remedies which the creditor might have : 1 Story's Eq. 477. Satisfaction of the judgment against the endorser would not be a satisfaction of the judgment against the maker, although both judgments were for the same debt. The contract of the maker and endorser, although evidenced by the same pieces of paper, are different and distinct ; the one is primarily liable—the other secondarily only. Whenever the endorser pays, he is entitled to have the note or bill delivered up to him and he may sue upon it, although there may already be a judgment upon it in the name of the former holder. The note or bill is not merged in such former judgment as between maker and payee, because the contract is different from that between maker and indorser on which

such former judgment is founded. It is not so, however, 1842.
with a judgment on a bond in favor of the obligee against co-
obligors, one being principal and the other a surety. There, DAVIS<br/>*v.*<br/>PERRINE.
the bond being merged in the judgment, is no longer sub-
sisting or assignable ; and if the surety is compelled to sat-
isfy it, such satisfaction puts an end to both bond and judg-
ment, and the surety can have no longer any benefit from
either as a subsisting security : *Hodgson* v. *Shaw*, 3 Mylne
& K. 190.

The statute of April 25, 1832, regulating suits on bills and
notes and authorizing the joinder of all parties liable on the
same instrument in one action, does not prevent the holder
from bringing separate actions as before, and § 7 declares
that the rights and responsibilities of the several parties to
any such bill or note, as between each other, shall remain the
same as though the act had not been passed, &c. I am, con-
sequently, of opinion that, as between the maker and payee,
the case stands on precisely the same footing as though the
bank had sued and recovered separate judgments ; and that
paying and satisfying the execution in the hands of the
sheriff by the Rudds, the endorsers, did not extinguish the
judgment as against Perrine the maker and that it was com-
petent for the bank, the plaintiffs in the judgment, to assign
it as a subsisting judgment, with the benefit of any lien crea-
ted by it on the property of Perrine for the indemnification of
the Rudds.

The next question is : whether this judgment can be con-
sidered as forming a lien on the real estate out of which the
money in court was raised by a foreclosure sale, such real
estate having been assigned by Perrine, the judgment debtor,
before the recovery of this or any other judgment against
him, but which assignment has since been declared fraudu-
lent and void as to creditors at the instance of other judg-
ment creditors who filed bills and have obtained decrees to
that effect and where an assignment has also been made by
Perrine to a receiver ? The generally received doctrine of
the court is that assignments fraudulent as to creditors under
the statute are not void *ab initio*, but voidable only at the
instance of creditors who file bills to impeach and set them
aside ; and when an assignment is found to be thus fraudu-

lent, the decree generally goes no further than to adjudge it fraudulent as to the creditor who has filed the bill and sets it aside so far as to give an opportunity of obtaining his debt and costs out of the property which was covered by it: *Henriques* v. *Hone*, 2 Edwards's Ch. Rep. 120; S. C. on appeal, 13 Wend. 240; *Wakeman* v. *Grover*, 4 Paige's C. R. 42, 43; *Hitchcock* v. *St. John*, 1 Hoffman's Ch. R. 522, 523. The decree, therefore, in the suits by the two judgment creditors against Perrine and his assignee would not, necessarily, vacate the assignment so as to subject the real estate to the lien of Rudds' judgment. But, there seems to be something in those two decrees out of the usual course. They declare and adjudge the assignment to be fraudulent and void and inoperative as regards the complainants in those suits and directs the assignee to release and convey to the receiver therein appointed all the right, title and interest which the assignee acquired in and to the lands, &c. of Perrine by virtue or under color of the assignment, &c.; and the receiver is then directed to convert the property into money and receive the proceeds of any sale which may have been made of the same; and that out of the property so to be received, the receivers in the first place shall "pay all just and lawful liens and incumbrances which may exist on the same prior to the lien of said judgments" (meaning the judgments on which the respective bills were filed) and in the next place that he pay the amount of the said judgment and so forth. Now, if the obstacle in the way of Rudds' judgment lien is removed by those decrees, then I think it follows that the Rudds must apply to the receiver for payment of their judgment out of the surplus money in question which the master reports the receiver is entitled to take; and that the mode of obtaining payment is not by excepting to the master's report, but by an order on the receiver if he should refuse to recognize their judgment as one of the liens provided for in the decrees. They can present a petition (under these decrees) for such an order upon the receiver; and the court will then consider the effect of the decrees and the rights of the Rudds under them. Their exceptions to the master's report must, in the mean time, be denied, with costs; and the motion made on the part of Underhill and of Archer and Martling.

the judgment creditors who have obtained the decrees for a distribution of the fund by the receiver, must stand over in order to give the Rudds an opportunity to move for leave to participate in the distribution.